UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>                                                       )<br>             Plaintiff,                       )<br>                                                       )<br>  v.                                               )<br>                                                       )<br>$40,000.00 IN UNITED STATES   )<br>CURRENCY,                                 )<br>                                                       )<br>             Defendant.                    )<br>_____)<br>                                                       )<br>JOHN R. GAGLIARDI,                 )<br>                                                       )<br>             Claimant.                      )<br>                                                       )<br>_____)   | 3:13-CV-00405-LRH-VPC<br><br>ORDER |

      This is a civil forfeiture action. Before the Court is Claimant John R. Gagliardi's ("Gagliardi") Motion for Sanctions and to Dismiss. Doc. #39.[1] The United States of America ("United States") filed a Response (Doc. #41), to which Gagliardi replied (Doc. #44).

**I.  Facts and Procedural History**

      The United States' Verified Complaint for Forfeiture in Rem alleges that on April 4, 2013, the Reno Police Department ("RPD") Drug Interdiction Unit was conducting an inspection of the

///

///

---

[1] Refers to the Court's docket number.

west-bound Amtrak train while it was stopped in Reno, Nevada.[2]  Doc. #1, ¶10.  The train was *en route* from Chicago, Illinois, to Emeryville, California, and was on a scheduled stop in Reno, Nevada, at the time of seizure.  *Id.*  During the inspection, an RPD officer approached the sleeper car assigned to Gagliardi and his companion Alex Alan Yanpolsky ("Yanpolsky").  *Id.*, ¶¶10-11.  Upon inquiry by an RPD officer, Gagliardi stated that he had nothing illegal in his room and that he had less than $10,000 with him.  *Id.*, ¶12.  Gagliardi and Yanpolsky each consented to a search of their sleeper car room, including the luggage therein.  *Id.*, ¶13.  The consensual search of the sleeper car room led to the discovery of a quantity of U.S. currency comprised of $100 bills in Chase Bank envelopes.  *Id.*, ¶¶14-17.  Gagliardi informed an RPD officer that he earned the money though the illegal sale of glass smoking "bongs" commonly used for smoking marijuana and other illegal drugs.  *Id.*, ¶18.  Gagliardi further stated that he and Yanpolsky were *en route* to California to attend a "glass show," and that he intended to sell his glass products and purchase a quantity of marijuana there.  *Id.*  Gagliardi and Yanpolsky also consented to a search of the two cellular phones which they possessed.  *Id.*, ¶20.  The cellular phones contained digital images of illegal drugs being processed, packaged, and used.  *Id.*  They also contained text messages consistent with illegal drug trafficking.  *Id.*  Based on the totality of the circumstances, the RPD officers seized the U.S. currency.[3]  *Id.*, ¶¶21-22.  The RPD officers also seized the two cellular phones in Gagliardi and Yanpolsky's possession.  Doc. #39, Ex. 1.

Following the seizure of the defendant currency, a canine trained to detect the odor of illegal drugs alerted to the presence of the odor of illegal drugs in the defendant currency.  Doc. #1, ¶23.  Thereafter, the currency was transported to a Bank of America where it was deposited into the

---

[2] Many of the allegations in the Verified Complaint are also set forth in the RPD Narrative. *See* Doc. #39, Ex. 1.

[3] The defendant currency at issue, totaling $40,000, was located in Gagliardi's backpack, Gagliardi's Apple laptop computer box, and Gagliardi's red duffel bag, and was comprised of four hundred $100 bills.  *Id.*, ¶24.

2

City of Reno Evidence Impound Account. Doc. #39, Ex. 1. According to the United States, the currency was then converted by RPD officers to a cashier's check payable to the United States Marshals Service ("USMS") and was deposited into the USMS Seized Asset Deposit Fund. *See* Doc. #41, p. 3.

The Verified Complaint alleges that the defendant property: (1) is proceeds traceable to exchanges of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); (2) was furnished or was intended to be furnished in exchange for controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); and (3) was used or was intended to be used to facilitate violations of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6). Doc. #1, ¶¶25-28.

On February 28, 2014, Gagliardi filed the present Motion for Sanctions and to Dismiss. Doc. #39. Discovery in this matter is ongoing and is not scheduled to close until August 15, 2014. *See* Doc. #36.

**II.     Discussion**

    **A. Standing and In Rem Jurisdiction**

Gagliardi contends that the conversion of the seized currency to a cashier's check stripped the United States of standing to pursue the civil forfeiture and the Court of in rem jurisdiction to hear this dispute. Gagliardi's contention in this regard is entirely without merit. In *United States v. $46,588 in U.S. Currency*, the Ninth Circuit rejected the argument that the Court's in rem jurisdiction is somehow affected by the conversion of seized currency into a cashier's check for deposit into the USMS Seized Asset Deposit Fund. 103 F.3d 902, 904-05 (9th Cir. 1996). Instead, the Ninth Circuit concluded that a cashier's check was "an appropriate, fungible surrogate for the seized currency." *Id.* at 905. Here, the "res" seized by the RPD Drug Interdiction Unit was

converted by the RPD into a cashier's check payable to the USMS and then deposited into the USMS Seized Asset Deposit Fund. Accordingly, as in *$46,588 in U.S. Currency*, the "res" remains identifiable and within the Court's jurisdiction.

To the extent Gagliardi contends that the United States has not produced any documents related to the seizure or documents showing that the RPD transferred by check or otherwise the currency or money to the United States, the Court declines to interfere with what appears to be a discovery dispute. Gagliardi filed a Motion to Compel (Doc. #38), in which he sought production of "all documents and evidence surrounding [RPD's] and [SPD's] April 4, 2013 seizure as well as information regarding seizure and evidence preservation, policies, procedures, rules and guidance and all information from all of the officers involved in the seizure both on the day of the seizure and thereafter as well as other seizures." On June 23, 2014, Magistrate Judge Cooke issued an Order granting in part and denying in part Gagliardi's Motion. *See* Doc. #72. Accordingly, the Court will defer to Magistrate Judge Cooke's adjudication of the matter. Moreover, whether the United States failed to produce the requested documents does not affect its standing to bring this lawsuit, or the Court's in rem jurisdiction to hear this case.

**B.  Sanctions**

Gagliardi further urges that a sanction of dismissal is appropriate because the United States destroyed over 500 pieces of exculpatory evidence, thereby denying him due process. *See* Doc. #39, pp. 5-11. First, Gagliardi claims that he cannot effectively rebut the United States' claims as to the amount, denomination, odor, age, and origin of the currency because its evidentiary value in this regard was destroyed when it was converted into a cashier's check. *Id.* at 7-11. Second, Gagliardi contends that the United States lost or destroyed the two cell phones and Chase Bank envelopes containing the seized currency. *Id.* at 8.

Under its inherent power to control litigation, a district court may levy sanctions, including dismissal of the action, for spoliation of evidence. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.

4

2006); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). However, sanctions may issue only when a party had some notice that the evidence was potentially relevant. *Id.* (citing *Leon*, 464 F.3d at 959; *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)). A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *Id.* (citing *Kitsap Physicians*, 314 F.3d at 1001-02 (affirming the district court's finding of no spoliation when potentially relevant documents were destroyed in the defendants' normal course of business)). Accordingly, in order to establish that the United States deprived him of his due process rights by destroying potentially exculpatory evidence, Gagliardi must show both that (1) the evidence destroyed was potentially exculpatory and (2) the government acted in bad faith in destroying it. *See California v. Trombetta*, 467 U.S. 479 (1984); *see also Arizona v. Youngblood*, 488 U.S. 51 (1988).

To the extent Gagliardi claims that he cannot effectively rebut the United States' claims as to the amount, denomination, age, and origin of the currency, the Court determines that his due process rights were not violated because there is no indication that the aforementioned information would be exculpatory in any way. Similarly, Gagliardi fails to set forth, and the Court will not devine, an explanation as to how a showing that only some of the money had an odor of a controlled substance would foreclose the United States from tying the seized money to illicit drug activity.[4] In this regard, the Court is unpersuaded by Gagliardi's suggestion that the United States

---

[4] The Court takes no position as to whether evidence of the positive dog alert would be admissible at trial or the extent to which such evidence has any probative value. Indeed, the Ninth Circuit has recognized that while "a positive dog alert is probative in showing that the currency has been in contact with a narcotics substance or contaminated currency at some 'prior' point in time," . . . "[t]he mere fact of prior contamination does not establish . . . that the currency was actually exchanged for or intended to be exchanged for drugs by the person currently in possession of the currency." *United States v. U.S. Currency*, $30,060.00, 39 F.3d 1039, 1043 (9th Cir. 1994) (internal citations omitted). Should Gagliardi wish to challenge the admissibility of the positive dog alert, he may do so at the appropriate time via a motion to suppress.

"admitted the evidence was exculpatory when it reported in RPD reports and alleged in it's Verified Complaint that <u>some of it</u> had an odor of a controlled substance." Doc. #44, p. 4.

Nevertheless, even if the aforementioned evidence was potentially exculpatory, Gagliardi has failed to present any evidence that the RPD acted in bad faith. Merely asserting bad faith falls woefully short of establishing the same. Indeed, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58. In this regard, the court's analysis and ruling in *United States v. $433,980 in U.S. Currency*, 473 F. Supp. 2d 672, 683-84 (E.D.N.C. 2006), is particularly instructive. There, the claimant argued that his due process rights were violated when state troopers converted the seized cash into a money order because it prevented him from rebutting the United States' claim that the seized currency was tainted by narcotic residue.[5] *Id.* at 682. The court rejected the claimant's insistence that the state troopers had acted in bad faith because he presented no proof in support thereof. The court further concluded that the state troopers had acted in good faith because they acted according to a long-standing policy whereby seized funds are promptly deposited into a holding account.

Here too, the United States asserts that the deposit of the seized currency into the USMS seized asset account was in accordance with long-standing policy regarding storage and handling of seized currency. *See* Doc. #41, p. 6. Indeed, the Seized Asset Deposit Fund was authorized by 28 U.S.C. § 544(c) for the purpose of holding seized cash pending forfeiture. *See United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1494 (9th Cir. 1995) ("This account is authorized by 28 U.S.C. § 524(c), which establishes a fund to hold assets after they have been forfeited [the Asset Forfeiture Fund, § 524(c)(1) ], and 'holding accounts' for assets before forfeiture, § 524(c)(5)."); *see also $46,588 in U.S. Currency*, 103 F.3d at 904. Moreover, the Court already addressed the

---

[5] Contrary to Gagliardi's assertion that the case did not involve a dog alert, the case did involve a drug sniffing dog, which alerted to the presence of narcotics, thereby revealing the large amount of currency at issue therein. *See id.* at 676-77.

propriety of converting the seized currency into a cashier's check. *See $46,588 in U.S. Currency*, 103 F.3d at 904. Gagliardi presents no evidence, nor is there any indication, that the manner in which the RPD handled the seized currency was contrary to established policy or otherwise tainted by irregularity. Accordingly, the Court finds that Gagliardi failed to establish that the RPD acted in bad faith when they converted the seized currency into a cashier's check and deposited it into the USMS Seized Asset Deposit Fund.

To the extent Gagliardi contests the United States' failure to produce the Chase Bank envelopes and cell phones in response to his requests for production, the Court again declines to interfere with what appears to be a discovery dispute. Gagliardi filed a Motion to Compel (Doc. #38), in which he sought production of "all documents and evidence surrounding [RPD's] and [SPD's] April 4, 2013 seizure as well as information regarding seizure and evidence preservation, policies, procedures, rules and guidance and all information from all of the officers involved in the seizure both on the day of the seizure and thereafter as well as other seizures." On June 23, 2014, Magistrate Judge Cooke issued an Order granting in part and denying in part Gagliardi's Motion. *See* Doc. #72. Accordingly, the Court will defer to Magistrate Judge Cooke's adjudication of this matter.

IT IS THEREFORE ORDERED that Gagliardi's Motion for Sanctions and to Dismiss (Doc. #39) is DENIED.

IT IS SO ORDERED.

DATED this 27th day of June, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE