UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>$40,000.00 IN UNITED STATES CURRENCY,<br><br>    Defendant.<br><br>JOHN R. GAGLIARDI,<br><br>    Claimant. | 3:13-cv-00405-LRH-VPC<br><br>ORDER |

This is a civil forfeiture action. Before the Court is the United States' Motion for Summary Judgment. Doc. #83.[1] Claimant John R. Gagliardi ("Gagliardi") filed an Opposition (Doc. #91), to which the United States replied (Doc. #93).

**I.   Facts and Procedural History**

On April 4, 2013, the Reno Police Department ("RPD") conducted routine drug interdiction activities on a westbound Amtrak train that was stopped in Reno, Nevada. Doc. #83 at 5. During the stop, Officer Danny James ("James") met with passengers Gagliardi and Alex Alan Yampolsky ("Yampolsky") in their sleeper car. *Id.* James initiated the meeting after examining the train's

---

[1] Refers to the Court's docket entry number.

passenger list and noticing that Gagliardi and Yampolsky were traveling on a one-way ticket from Naperville, Illinois, to Emeryville, California, and that the ticket had been purchased one day prior to travel. *Id.* Gagliardi and Yampolsky stated that they were not traveling with a large amount of currency or illegal drugs, and the RPD alleges that they consented to a search of their room and luggage. *Id.*

During the search, Gagliardi asked James to be careful while looking through the luggage because it contained glass products described as pipes for tobacco use. *Id.* The government states that the glass products found "are of a type typically used for smoking marijuana." *Id.* When asked why he was carrying a large number of glass pipes on the train, Gagliardi responded that he was traveling to Alameda, California, to attend a glass show connected to his glass selling business. James then searched Gagliardi's backpack and found a Chase Bank envelope that contained a large number of $100 bills. *Id.* at 6. While searching the remainder of the room and luggage, James found three other Chase Bank envelopes containing large quantities of $100 bills. The envelopes were located (1) in Gagliardi's backpack, (2) in a laptop computer case found inside the backpack, (3) sewn inside the lining of Gagliardi's jacket found in Gagliardi's backpack, and (4) inside a cell phone box found in a red duffel bag owned by Gagliardi. *Id.*

After discovery of the four envelopes containing $100 bills, James requested that Detective Madhu Karup ("Karup") join him in Gagliardi and Yampolsky's room to continue the questioning. *Id.* Karup continued Gagliardi's interview in a separate room while James searched Yampolsky's luggage, allegedly with consent, and found a Chase Bank envelope containing a large quantity of $100 bills. *Id.* at 7. Yampolsky told James that the currency belonged to Gagliardi and was earned in connection with his glass business.[2] *Id.* Yampolsky added that he and Gagliardi were traveling to a glass show in Seattle, Washington. *Id.* Meanwhile, Gagliardi told Karup that he was traveling

---

[2] The government alleges that Gagliardi "characterized his glass-selling business as an illegal business." Doc. #83 at 5. Gagliardi responds that he merely meant that "it was not incorporated and he did not have a business license." Doc. #91 at 9.

2

to California to purchase marijuana[3] and that he possessed approximately $50,000 in U.S. currency. *Id.* Gagliardi added that he was carrying such a large amount of currency because he did not trust banks.[4] *Id.* The government alleges that Gagliardi and Yampolsky each consented to a search of their cell phones. *Id.* at 8. The search yielded images of marijuana, marijuana being processed, and images of Gagliardi's glass pipes. *Id.* Gagliardi stated that the photographs were not his, and that the officers likely placed the photographs on his cell phone during their search. *Id.*

Gagliardi contests the government's allegations that he consented to the searches of his room, luggage, and cell phone. Specifically, Gagliardi states that the individuals who searched his room did not identify themselves as police officers, and "he was intimidated and threatened with a knife" prior to the search. Doc. #91 at 9, 12. Gagliardi adds "that he was not asked how much cash he had, and that he did not have any cash sewn in his jacket, it merely went into the lining of his coat because of a hole in his pocket." *Id.* at 9. Finally, Gagliardi states that he never told the officers that he intended to buy a pound of marijuana, and that any reference to marijuana was related to his status as a medical marijuana patient outside of Nevada. *Id.* at 12.

The RPD seized the currency in the five Chase Bank envelopes found in Gagliardi's belongings and transported the currency to the RPD office where a trained drug-detection canine, "Rhoden," alerted to the odor of illegal drugs on the currency. *Id.* The RPD then counted the currency and determined that the four envelopes found in Gagliardi's luggage totaled $40,000, and the one envelope attributable to Yampolsky contained $9800. *Id.* Thereafter, the currency was transported to a Bank of America branch office, where it was deposited into the City of Reno Evidence Impound Account. Doc. #39, Ex. 1. According to the United States, the currency was

---

[3] Gagliardi states that he "was authorized to use medical marijuana by his doctor and has had a medical marijuana card for years prior to the seizure." Doc. #91 at 3.

[4] The United States points out that Gagliardi made this claim "even though the currency was located in Chase Bank envelopes." Doc. #83 at 7.

3

then converted by RPD officers to a cashier's check payable to the United States Marshals Service ("USMS") and was deposited into the USMS Seized Asset Deposit Fund. *See* Doc. #41 at 3.

The Verified Complaint alleges that the defendant property: (1) is proceeds traceable to exchanges of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); (2) was furnished or was intended to be furnished in exchange for controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); and (3) was used or was intended to be used to facilitate violations of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6). Doc. #1, ¶¶25-28. The United States filed the present Motion for Summary Judgment on September 12, 2014. Doc. #83.

**II.     Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

1    To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

The exclusionary rule applies in civil forfeiture cases. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702 (1965); *United States. v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1164 (9th Cir. 2008). The rule "bars the admission of evidence obtained in violation of the U.S. Constitution, as well as 'fruits of the poisonous tree.'" *$493,850.00 in U.S. Currency*, 518 F.3d at 1164 (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1395 (9th Cir. 1989)). "[U]nder the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible." *Id.* at 1164-65 (quoting *United States v. Washington*, 490 F.3d 765, 774 (9th Cir. 2007)).

**III.   Discussion**

Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the government has the burden to prove by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c); *United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). When "the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between

5

the property and the offense." 18 U.S.C. § 983(c)(3). The determination of whether the government has met its burden of proof is based on the aggregate of facts, including circumstantial facts. *United States v. $42,500.00 in U.S. Currency*, 283 F.3d 977, 980 (9th Cir. 2002); *see also United States v. U.S. Currency*, *$30,060.00*, 39 F.3d 1039, 1041 (9th Cir. 1994). Once the government meets its burden, the burden shifts to the claimant to prove by a preponderance of the evidence that he or she is an innocent owner of the property. 18 U.S.C. § 983(d). Specifically, the claimant has the burden to "prove the money had an independent source and had not been used illegally." *United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212, 1217 (9th Cir. 2001) (citing *United States v. $215,300.00 in U.S. Currency*, 882 F.2d 417, 420 (9th Cir. 1989)).

Here, the United States is pursuing forfeiture under 21 U.S.C. § 881(a)(6), which subjects currency to forfeiture if: (1) it were "intended to be furnished . . . in exchange for a controlled substance," (2) it were "proceeds traceable to such an exchange," or (3) it were "intended to be used to facilitate a violation of [the Controlled Substances Act, 21 U.S.C. § 801 *et seq*.]" Therefore, the United States has the initial burden to establish that a "substantial connection" exists between the currency and an illicit transaction by a preponderance of the evidence.

In interpreting CAFRA, the Ninth Circuit retained the section 1615 probable cause pleading requirement. *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1169 (9th Cir. 2008) (holding "that section 1615 continues to require that the government show probable cause to institute a forfeiture action"). The Ninth Circuit uses the "aggregate of the facts test" to determine whether the government has the requisite probable cause to institute forfeiture. *$42,500.00 in U.S. Currency*, 283 F.3d at 980-82. Under this test, the government meets its burden if "the aggregate of facts gives rise to more than mere suspicion that the property was exchanged for or intended to be exchanged for drugs." *United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d 1357, 1363 (9th Cir. 1986). "To pass the point of mere suspicion and to reach probable cause, it is necessary to demonstrate by some *credible evidence* the possibility that the money was in fact connected to drugs." *U.S. Currency, $30,060.00,* 39 F.3d at 1041 (quoting *United States v. Dickerson*, 873 F.2d

6

1181, 1184 (9th Cir. 1988)).  "Each case stands upon its own facts, and the presence or absence of any one fact is not dispositive; indeed probable cause is not an exacting standard."  *$42,500.00 in U.S. Currency*, 283 F.3d at 980.

Prior to establishing that property seized is subject to civil forfeiture as a matter of law under 18 U.S.C. § 983(c), the government must first establish that the search that yielded discovery of the seized material was constitutionally valid.  Here, the government contends that Gagliardi consented to a search.  However, Gagliardi states that he did not consent, he was not aware that the plain-clothed individuals who requested to search his room and belongings were police officers, and that one of the individuals threatened Gagliardi with a knife for initially refusing to consent to the search.

Consent to a search that was obtained by threats or coercion is not valid.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973) (noting that consent is not voluntarily if "coerced by threats or force, or granted only in submission to a claim of lawful authority").  "It is the government's burden to prove that the consent was freely and voluntarily given."  *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2003).  "Whether consent to a search was voluntary, or was the product of duress or coercion, is a question of fact to be determined from the totality of the circumstances."  *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992).  Courts should not grant summary judgment regarding the validity of a search if a genuine dispute of material fact remains as to whether the search was supported by valid consent.  *Schneckloth*, 412 U.S. at 233; *see United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1014 (9th Cir. 2013) (denying summary judgment because genuine issues of material fact remained as to whether seized currency was connected to drug trafficking, and whether the currency was obtained legitimately).

Although the government has disputed Gagliardi's innocent ownership of Defendant $40,000 and has identified evidence to indicate substantial connection to the sale or purchase of contraband, the government has not met its burden to establish that Gagliardi freely consented to the search of his room and luggage in the first place.  *See Patayan Soriano*, 361 F.3d at 501.

7

Gagliardi has therefore raised a genuine dispute of material fact that precludes the government's request for summary judgment on the seized currency. If Gagliardi did not consent, or if consent was obtained by intimidation, then the Court cannot grant summary judgment on the currency seized as a result of the search because if consent was absent or coerced, this would taint all evidence discovered based on said consent. *See One 1958 Plymouth Sedan*, 380 U.S. at 702 (1965) (holding that the exclusionary rule applies to civil forfeiture cases). Accordingly, the Court cannot grant the United States' Motion for Summary Judgment because a genuine dispute of material fact remains.[5]

### IV. Conclusion

IT IS THEREFORE ORDERED that the United States' Motion for Summary Judgment (Doc. #83) is DENIED.

IT IS FURTHER ORDERED that the Court will hold an evidentiary hearing on May 21, 2015, at 1:30 p.m., on the question of whether Gagliardi consented to the search underlying this case.

IT IS SO ORDERED.

DATED this 15th day of April, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[5] The government has argued that the Court should discount Gagliardi's contention that Defendant currency did not have a substantial connection to drug activities, and that the currency had a legitimate source. The Court declines to rule on these issues at this time, however, because the dispute as to whether Gagliardi consented to the search of his room and belongings in the first place itself precludes summary judgment.